## SUPREME COURT.

Stephen Krom, Survivor of John A. Schenck, respondent,
agt. John J. Levy, appellant.

*Book of account received in evidence — after the decease of the one who kept
it — special agreement — defective work — delivered and retained.*

Where a surviving partner, plaintiff, introduced a *book of account* as evi-
dence of work done and materials furnished for the defendant, kept by
his deceased copartner, and the testimony of the plaintiff showed that, at
the time the entries were made, he knew them to be correct; that he
kept all the memoranda from which the entries were transcribed; that
they were usually on a slate kept for that purpose, and transcribed from
that into the book by his deceased partner, sometimes every day and
sometimes at intervals of two or three days; that witness generally
assisted, reading therefrom from the slate—the items themselves being
taken orally from the workmen and some from himself; that he saw
most of the entries at the time they were made, or very soon after, and
that he believed the book produced to be the original, and that the firm
did work for the defendant:

*Held,* that this evidence was sufficient to allow the book to be received as
evidence in the case, and the plaintiff might properly read therefrom to
supply the dates and amounts of the several items which could not be
otherwise given.

Where a special agreement was made between the defendant and the firm
for repairing two card-cutters and grinding and putting a third in order,
and the work appeared to have been performed and the card-cutters
returned to and retained by the defendant, but the material used in
repairing and completing the two was either not good or improperly
tempered, and for that reason the defendant resisted the plaintiff's
demand for the price agreed to be paid for the work and material used:

*Held,* that this he could not do after receiving and retaining what had been
done. It was such a performance as entitled the plaintiff to recover the
price agreed to be paid, subject to the defendant's right to reduce it by
way of recoupment or counter-claim on account of the defective manner
in which the work was done. But this defense was not set forth in the
defendant's answer, and for that reason it could not have been properly

Krom agt. Levy.

allowed by the referee, even though it appeared in his evidence given
on the trial.

*First Department, General Term, March,* 1874.

NOAH DAVIS, *presiding,* WESTBROOK *and* DANIELS, *JJ.*

THIS action was brought to recover a balance of account
for work done and materials furnished by the plaintiff and
John A. Schenck, as partners, for the defendant. The refe-
ree reported $63.23, and interest on the same from the 8th
day of June, 1864, to be due to the surviving plaintiff. From
the judgment entered on the report the defendant appealed.

*N. B. Howie,* for appellant.

The summons and complaint served on defendant June 8,
1864; answer served June 28, 1864; order of reference to
D. T. Walden, Esq., entered November 15, 1864. Cause
tried before referee. Judgment entered in favor of defend-
ant against plaintiff, for $174.02, March 31, 1865. Notice of
appeal to general term served April 27, 1865; judgment
affirmed May 16, 1867; judgment of affirmance entered May
22, 1867. Notice of appeal to court of appeals served June
13, 1867. Judgment reversed by commission of appeals
January, 1872. Order referring issues to Edward S. Dakin,
Esq., entered May 15, 1872. Cause tried before referee.
Judgment entered in favor of plaintiff against defendant, on
referee's report, for $840.39, October 26, 1872. Notice of
appeal served November 2, 1872. Case settled February 12,
1873. The complaint alleges that on December 1, 1862,
defendant was indebted to plaintiff in $255.99, balance due
for work, labor and services furnished by plaintiff to defend-
ant between May 9, 1862, and December 1, 1862. The
answer denies all the allegations of the complaint, and alleges
that the plaintiff Krom has no interest in the claim and that
the plaintiff Schenck is the only party interested therein;

that in November, 1862, a contract was made between
Schenck and defendant that Schenck should plane and cut a
back form upon a brass casting to be furnished by defendant,
and to complete the same within three days, for fifteen dol-
lars; that defendant procured the casting and delivered it to
Schenck; that Schenck neglected and refused to so plane and
cut the said back form, and in consequence thereof the defend-
ant sustained loss and damage to the sum of $250, and coun-
ter-claims the same. Upon the trial, it was stipulated
between counsel that the counter-claim, set up in the answer,
be considered as a counter-claim against the plaintiffs, who
are deemed as denying it by a' reply.

*Facts.*—The plaintiff, Schenck, had for many years prior
to this action, in his individual name and on his sole account,
dealt with defendant, making and repairing machinery. In
April, 1862, the plaintiff, Krom, became a partner with
Schenck, and so continued until December, 1862. Defend-
ant had no notice or knowledge whatever of the partnership.
He never knew Krom other than as a workman in Schenck's
shop. Sometime prior to August, 1862, the plaintiff con-
tracted with defendant to repair two card-cutting machines of
defendant's, by making new cutters, set of springs, cross-bar,
set screws, and to return said machines to the defendant
perfect and complete, for the sum of $300; and said machines
were sent to plaintiff's shop for that purpose. The charge
of $310, under August 13, 1862, in plaintiff's bill of parti-
culars, is for such contract to repair said two card-cutting
machines. The new cutters put into said machines by said
plaintiffs were improperly tempered, or the material of which
they were made was not good. Said two machines were
returned by plaintiffs to defendent about the thirteenth of
August, imperfect and incomplete, and the plaintiffs did not
perform their contract to repair them. Some time in June or
July, 1862, the plaintiffs contracted with the defendant to grind
up and put in order another card-cutting machine for defendant
for the sum of forty dollars, and said machine was sent to

plaintiff's shop for that purpose. The charge of forty dollars under date of August 23, 1862, in plaintiffs' bill is for such contract. Said machine was returned by plaintiffs to defendant about August 23, 1862, imperfect and incomplete, and plaintiffs did not perform their contract to repair it. All of said machines were unfit for the purpose for which they were constructed, owing to the failure of plaintiffs to repair them as and in the manner they agreed to. Defendant employed one Catlin to do the work plaintiffs left undone, or had done improperly, to and upon said card-cutting machines, and defendant necessarily expended on such work $227.20. In October, 1862, plaintiffs contracted to plane and cut for defendant a "plaid form," on a brass casting provided by him, for fifteen dollars. Defendant paid forty-five dollars and eighty cents for such pattern of such plaid form. Plaintiffs began the work but soon abandoned it, returning the casting to defendant, and never performed their contract to plane and cut it. When returned, the casting had been planed too low, or too thin, to be useful for any purpose, save as old metal, for which it was sold at the highest price it would bring, fifteen dollars; and the pattern for it had become useless to defendant. The work on the casting contracted to be done by plaintiffs would have cost the defendant $150. A new casting would have cost the defendant $45.80, at the time the plaintiffs returned the old one.

I. The contracts were entire, and full performance of them was a condition precedent to any recovery by plaintiffs of the price agreed upon for the repairs (*Smith* agt. *Brady*, 17 *N. Y. R.*, 173; *Harmony* agt. *Bingham*, 12 *id.*, 99; *Jenkins* agt. *Wheeler*, 3 *Keyes*, 645 [652]; *Brown* agt. *Weber*, 38 *N. Y. R.*, 187). A refusal to find a material fact, supported by evidence, is error in law (*Beck* agt. *Sheldon*, 48 *N. Y R.*, 365).

II. When a right of action has once accrued, it can only be discharged by a release or the receipt of something in satisfaction (*McKnight* agt. *Dunlop*, 5 *N. Y. R.*, 537; *Christianson* agt. *Lainford*, 19 *Abb.*, 221). No rule or principle

of law required defendant to inform plaintiffs of his inten-
tion to hold them to their contract (*Pike* agt. *Butler*, 4 *N.
Y. R.*, 360). Where illegal evidence is admitted, which bears
in the least degree on the result, it is fatal (*Baird* agt. *Gil-
lott*, 47 *N. Y. R.*, 186; *Worrall* agt. *Parmelee*, 1 *id.*, 519;
*Wilson* agt. *Wilson*, 4 *Keyes*, 413). To make books of
account competent evidence, see *Greenl. Ev., vol.* 1, § 117
*and notes; Id.*, 117, *note* 2; *Phil. on Ev., vol.* 1, 5 *Am. ed.*,
*p.* 310, *note* 3.

*Coles Morris* and *Michael H. Cardozo*, for respondent.

I. The facts in the case fully sustain the rulings of the
referee admitting in evidence the entries in the plaintiff's
book of accounts, and call for the application of the rule that
entries and memoranda, made in the usual course of business,
by clerks and other persons, may be received in evidence after
the death of the person who made them (*Merrill* agt. *Ithaca
& Owego Railroad Co.*, 16 *Wend., p.* 594, *opinion of* COWEN,
*J., in which all the cases are reviewed; Davidson* agt. *Pow-
ell*, 16 *How. Pr. R.*, 467; *Smith* agt. *Sanford*, 12 *Pick.*, 139;
*Ingraham* agt. *Bockens*, 9 *Serg. & Rawle*, 285; *Stroud* agt.
*Tilton*, 2 *Keyes' R.*, 140).

II. The referee's decision upon the conflict of evidence in
the case will not be disturbed by this court (*Howell* agt.
*Biddleton*, 62 *Barb.*, 131; *Baker* agt. *Spencer*, 58 *id.*, 248;
*Matthews* agt. *Coe*, 56 *id.*, 430).

III. This case has been twice tried by different referees;
there are no errors of law to be corrected; the exceptions
upon which the defendant relies on this appeal being wholly
to findings of fact, as to which the evidence is, at least,
conflicting.

Under these circumstances a third trial should not be
granted, even if the court should be of opinion that the
report of the referee is against the weight of evidence (*Tal-
cott* agt. *Commercial Ins. Co.*, 2 *Johns. R.*, 467; *Fowler* agt.
*Ætna Fire Insurance Co.*, 7 *Wend.*, 270).

DANIELS, *J.*—The plaintiffs' demand was proven in part by his own evidence accompanying the book of account kept by his deceased copartner.  He was asked what he knew about the entries in the book, and the defendant objected to the inquiry as irrelevant and incompetent, because it appeared that his copartner kept the book exclusively, and the knowledge of the witness must necessarily be secondary evidence, and he should be confined to his knowledge of work done for the defendant.  These objections were very properly overruled, because the witness' question merely required the witness to state what knowledge he had concerning the entries, and his answer clearly showed the propriety of the inquiry, for he merely said that at the time they were made he knew them to be correct.  The exception taken to this ruling of the referee has no colorable support to sustain it.

Upon his cross-examination this witness stated that he kept all the memoranda from which the entries were transcribed; that they were usually on a slate, kept for that purpose, and transcribed from that into the book by Mr. Schenck, sometimes every day and sometimes at intervals of two or three days, and that he generally assisted, reading from the slate.  The items themselves, he stated, were taken orally from the workmen and some from himself.  These memoranda were of work done by himself and the other workmen, and all the work they and he did.  He stated further that he saw most of the entries at the time they were made or very soon after, and that he believed the book produced to be the original.  It also appears that the firm did work for the defendant.  This evidence was sufficient to allow the book to be received as evidence in the case (*Sickles* agt. *Mather*, 20 *Wend.*, 72, 75–77; *Merrill* agt. *Ithaca & Owego Railroad Co.*, 16 *id.*, 586).

After it was given, and before the book was received, the witness stated he could of his own knowledge relate what the first work was which was done by the plaintiffs for the defendant; and as he was about to read from the book the

defendant objected that the entries in the book were not evidence, for the reason that Schenck was the proper person to prove them, and that the evidence of the witness reading from the book was secondary and incompetent. These objections were overruled and the defendant excepted. The witness was then about proceeding with the reading of the entries, when it was agreed he could use the bill of particulars instead of the book, and he did so. But before reading from it he stated that he could testify of his own knowledge of the accuracy of every item in the bill as to prices, and he knew they were reasonable, and added further that the work and materials mentioned in the bill was done and furnished by the plaintiffs for defendant, all between May 10 and October 26, 1862, but he could not give the dates without looking at the book, and then read from the bill of particulars. As the items were authenticated by the evidence which the witness gave, there was no impropriety in allowing him to read them for the purpose of supplying the dates and amounts, which could not be otherwise given (1 *Greenl. Ev.*, § 436). In the case of *Russell* agt. *Hudson River Railroad Co.* (17 *N. Y. R.*, 134) it was held that memoranda might be so used by a witness when it appeared to have been made at or about the time of the transaction to which it relates; that its accuracy is duly certified by the oath of the witness, and that there is necessity for its introduction on account of the inability of the witness to recollect the facts (*Id.*, 140). Within these authorities it was entirely proper to allow the witness to read from the bill, as that was substituted by consent for the book, for the purpose of supplying the dates and amounts, which could not otherwise have been obtained (*McCormick* agt. *Penn. Central Railroad Co.*, 49 *N. Y.*, 304, 315). After this evidence was taken, the book was received in evidence at the request of the referee and without objection. When the plaintiff rested, the defendant moved to have the evidence given by him stricken out, so far as it appeared to be based upon entries in the book. This was-

refused, and an exception taken by the defendant. This was too general to render it practicable; but as the book was so far authenticated by the oath of the witness as to render it evidence in the case upon matters entered upon it and not within his recollection, he had the right to that extent to base his evidence upon it. This evidence, so far, was merely a repetition of the contents of the book, dependent entirely upon the entries made for its weight and effect.

Besides that, the examination of the defendant as a witness showed that there was no substantial controversy concerning the amount of work done and materials supplied; for he did not appear to claim that the charges were unfounded or excessive, but simply that many of the items charged in the account appertained to and were included within special agreements made for particular jobs of work between himself and the deceased copartner. The referee was not in error for refusing to strike out the evidence of the witness, nor in permitting him to refer to the entries, in the course of his evidence, for their dates, amounts and such other particulars at it would be impracticable for him to give from memory.

Special agreements were made between the defendant and the firm for repairing two card-cutters and grinding and putting a third in order. The work stipulated for appears to have been performed and the card-cutters returned to and retained by the defendant; but the material used in repairing and completing the two was either not good or improperly tempered. For that reason the defendant resisted the plaintiff's demand for the price agreed to be paid for the work and material used. This he could not do after receiving and retaining what had been done. He acted voluntarily in doing that, and for that reason could not successfully resist the claim made for a recovery of the price, so far as the labor and material should prove to be beneficial to him. The law only allows a party to retain, without compensation, the benefits of a partial performance, when from the nature of the contract he must receive such benefits in advance of a full

performance, and by its terms or just construction he is under no legal obligation to pay until the performance is complete (*Smith* agt. *Brady*, 17 *N. Y. R.*, 173, 187). The authorities cited and relied on by the defendant in which it was held that a recovery could not be had by the party partially performing an entire agreement, are all within this principle, and for that reason not applicable to the point made by way of defense to the charges for the work and materials upon the card-cutters. The plaintiff and his partner performed all the work and supplied all the material which the performance of their agreement as to card-cutters required, and after that was done they were received and retained by the defendant. That was such a performance as entitled the plaintiff to recover the price agreed to be paid, subject of course to the defendant's right to reduce it by way of recoupment or counter-claim, on account of the defective manner in which the work was done (2 *Parsons on Cont.*, 2d ed., 246, 247; *Leavenworth* agt. *Packer*, 52 *Barb.*, 132; *Neaffie*, 4 *Lans.*, 4; *Miller* agt. *Eno*, 14 *N. Y. R.*, 397; *Norris* agt. *La Farge*, 3 *E. D. S.*, 375; *Harris* agt. *Bernard*, 4 *id.*, 195; *McKnight* agt. *Devlin*, 52 *N. Y.*, 399).

But that defense was not set forth in the defendant's answer, and for that reason it could not have been properly allowed by the referee, even though it appeared in his evidence given upon the trial. No reason for the rejection of this claim appears by the conclusions of the referee, unless it may be that it was not satisfactorily established. But the condition of the pleadings was sufficient to justify the action of the referee in disallowing it. As they are contained in the case he could not lawfully have made any deduction from the plaintiff's account by reason of this demand (*McKyring* agt. *Bull*, 16 *N. Y. R.*, 297; *Brazil* agt. *Isham*, 2 *Kern.*, 9). This is a defect which cannot be disregarded or supplied for the purpose of reversing this judgment. The defendant had his election to set this claim up by way of defense or reserve it for an independent action in his own behalf (*Gil-*

*lespie* agt. *Torrance*, 25 *N. Y. R.*, 306, 309, 311). By omitting to allege it in his answer he must be presumed to have elected not to rely on it as a defense to the claim made by the plaintiff for the work done upon the card-cutters.

As this defense was not involved in the action, it is unnecessary to examine the defendant's exception to the evidence given showing that the defendant made no claim that the work done or materials furnished for the card-cutters was in any respect defective. At the same time no reason exists for doubting its propriety, since it would have a slight tendency, certainly, to show that both had proved satisfactory.

The breach of the contract made by the plaintiff and his partner for planing and cutting the back form was set forth in the answer, and the defendant was allowed $125 by way of damages for its non-performance. It was claimed that a further allowance should have been made for the difference in the value of the form and the price for which it would sell as old metal. This claim was made upon the ground that it had been rendered useless by the work performed on it. The only evidence supporting that position was that which the defendant himself gave as a witness; while that of Hookey and Tucker, who were produced as witnesses on his behalf, failed to sustain him in this respect; they described it as a casting on which work had been done, but not in such a manner as to injure it. The evidence they gave fully justified the referee in his conclusion on this subject.

But one of these witnesses, who seems to have been fully competent to form an accurate judgment as to the expense of performing the agreement made, testified that it would cost $150 to do the work upon it which the plaintiff and his partner undertook to perform, and that ten or fifteen dollars' worth of the work only had been done upon it. That does not appear to have been allowed to the plaintiff, and cannot be said to be included in the bill of particulars. The defendant has, consequently, derived that amount of benefit from the partial performance shown, without cost or expense on

his part.  To complete the work contracted for required an expenditure of $135 or $140, and that included the contract price of fifteen dollars which defendant agreed to pay the plaintiff and his partner for it.  As that was not paid by the defendant, but would have been deducted from the damages arising out of their failure to perform, and that deduction will reduce the damages to the amount allowed by the referee, it placed the defendant precisely where he would have been if the agreement had been performed as it should have been.

No reason can be found for doubting the legality of the conclusions stated by the referee.  The judgment, therefore, should be affirmed, with costs.

DAVIS, P. J., concurred.